### ARCHER v. MUNDAY.

1. Testator directed his lands to be divided by commissioners equally between his daughter A and the children of his son B, to them and their heirs forever. The commissioners made the division and assessed a sum of money to be paid by A to equalize the partition. *Held,* that the payment of this assessment was not necessary to enable A to recover from a stranger in possession the part assigned to her.

2. The action for recovery having been brought long after the assessment laid, and more than four years after the children attained their majority, the debt of A was barred by the statute of limitations.

3. The title of A to this land was clearly not equitable; if not a devisee, she was certainly an heir at law.

4. The facts, circumstances, and pleadings of this case show that the testator of plaintiff was the common source of title of both parties to the action, beyond whom plaintiff need not go in proving her title.

5. The devise in this case, taken together with a subsequent clause giving the residue of his property to trustees for his son B, to be fully possessed and enjoyed by B for life, and after his death such property "with the lands already specified to his children, to them and their heirs forever, discharged of the trust," shows testator's intention to have been that A should have a moiety, and that the division was not to be *per capita.*

6. If A had received property under her husband's will (a fact not established by the evidence), it would not estop her from recovering her land of inheritance from a stranger who held under deed of the husband with general warranty.

Before KERSHAW, J., Abbeville, February, 1881.

Action by Frances E. Archer against William R. Munday, commenced August 11, 1879. It appears from the brief that James M. Calvert had three small children in 1846, and therefore the youngest of them must have attained his majority not later than 1867. The fourth clause of testator's will is given in full in the opinion. The eighth clause was as follows:

"I give, devise, and bequeath to William Hill, my grandson, and Robert A. Archer, my executors, hereinafter named, under the trusts hereinafter set forth, the negroes Charles, Sarah, Anaca, and Edy, Jr., with their future increase. Also an equal share of the rest and residue of my estate which may remain for final distribution at the settlement of my estate upon my decease. To be held by them or the survivor of them and their heirs or successors, in trust for the use of my son, James M. Calvert, they permitting him to use, possess, and enjoy the same as fully and freely as if the same were given to him absolutely, but not to be at his disposal or liable to seizure for his debts or contracts; and after the death of my said son, James M. Calvert, I give, devise, and bequeath all the aforesaid property with the lands already specified to his children, to them and their heirs forever, discharged of the trust."

Other matters are fully stated in the opinion.

Mr. *T. P. Cothran*, for appellant.

Messrs. *M. P. De Bruhl* and *S. C. Cason*, contra.

April 11, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This was an action to recover a tract of land in Abbeville county. The plaintiff claimed by a will of her father, who died in 1846. The defendant held a deed from one Geo. Nickles, who was the grantee of Robert A. Archer, the husband of the plaintiff. This deed was executed in 1849, and upon it the plaintiff had renounced her dower. Archer, the husband, died in 1873.

The clauses of the will of plaintiff's father under which she claimed are as follows: "My will is that the remainder of my lands, supposed to be about three hundred and sixty acres, be equally divided between my daughter Frances E. Archer and the children of my son James M. Calvert, to them and their heirs forever. My will is further, as it respects my lands, that three disinterested persons be appointed by the Court of Ordinary for the district in which the premises lie, to go upon the lands and point out such lines of demarcation according to the quantity specified, taking into view situation and timbered lands, as may be best suited to the interests of all concerned."

Shortly after the death of the testator three commissioners, appointed as the will directed, went upon the lands and divided it into two parts, one of which, containing one hundred and eighty-three and one fourth acres, was allotted to the plaintiff, then the wife of Robert A. Archer.

In the assignment to the plaintiff the commissioners assessed the plaintiff $120.75, to be paid by her to the children of her brother, James M. Calvert. This is the land now in dispute. There was no direct evidence before the court that this assessment had been paid. The plaintiff herself was examined, but could not say positively whether it had or not. The court held that from the lapse of time, more than thirty years, it might be presumed paid.

There was evidence that the plaintiff was in possession of a house and lot in Abbeville, worth some $2000 or $2500, under

the will of her husband, over which, however, there was a judgment in favor of Robert Archer's brother for some $3000. This judgment had not been enforced, from leniency to the widow. It further appeared that she has been assigned a homestead in personalty to the amount of $262.

At the close of plaintiff's testimony defendant moved for a nonsuit, on the grounds, 1st, that the payment of the $120.75 assessed on the plaintiff at the division of the land by the commissioners was a precedent condition to the vesting of title to the land in her; and, 2d, that the division of the land should have been *per capita* between the plaintiff and the children of James M. Calvert, and not in equal parts between the two. This motion was overruled.

When the testimony was all in the defendant moved to dismiss the complaint on the further ground that plaintiff, being in possession of property as devisee of her husband, she was estopped from disturbing the defendant, who was in possession by warranty deed from her said husband. This motion was also overruled, the judge holding that under the will of John Calvert the plaintiff took one half of the land devised to her and the children of John M. Calvert.

The jury returned a verdict for the plaintiff for the land.

The appeal brings up the following questions: 1. Should the presiding judge have required further evidence as to the payment by the plaintiff of the $120.75 assessed upon her at the division of the land?

2. Was plaintiff's title merely an equitable title, and insufficient to defeat the defendant?

3. Did the presiding judge err in holding that the defendant could not dispute the plaintiff's title, as he held the deed of plaintiff's husband, who derived his title from plaintiff?

4. Did the judge err in sustaining the division of the land by the commissioners into two equal parts, instead of *per capita* between the plaintiff and the three children of James M. Calvert?

5. Did the warranty deed of plaintiff's husband estop plaintiff, she having been vouched and holding property real and personal through her said husband?

1. We do not concur in the position taken by the defendant that the payment of the $120.75 assessed by the commissioners was a precedent condition to the vesting of title in the land. There is nothing in the will, either directly expressed or impliedly suggested, to sustain this view. The title to the land was not in abeyance upon the death of the testator until the division. It either passed by inheritance to his heirs at law, the plaintiff being one, or it passed by the will to the devisees. The will is not set out in full, but in either case the plaintiff was invested with title subject to the division which was directed. The payment of the $120.75 was assessed, not by the testator, but by the commissioners after his death. The commissioners had no power delegated to them to attach conditions either precedent or subsequent.

But if this was otherwise, we think the presiding judge was justified in holding that this assessment was not in the way. Even if this amount had been evidenced by a sealed obligation, the lapse of thirty years would have been sufficient to regard it paid upon the facts here. It is not necessary to express an opinion generally as to the effect of such great lapse of time on sealed obligations. The tendency has been to regard even twenty years as something more than a mere presumption of payment. The recent act, however, placing such obligations on the same footing with unsealed contracts as to the statute of limitations, will soon remove this question from judicial inquiry, and as it is not necessarily involved here we reserve opinion.

The assessment in this case was not evidenced by bond or other sealed paper. It was no doubt accepted by the plaintiff as a debt due by her to the children of James M. Calvert to equalize the division in the land; but at most it was an open contract implied by the circumstances, and we can see no reason why it was not subject to the statute of limitations, and barred by that statute, after four years, from the majority of the children. In any event we sustain the result of the judge's ruling.

2. There is nothing in the case upon which to base the proposition that plaintiff's title was merely an equitable title. As has been said above, she was either an heir at law of the testa-

tor or a devisee, in either of which cases she had legal title. There was no trust or any species of equitable interest created in her favor. The language of the will is "between my daughter Frances E. Archer and the children of my son James M. Calvert, to them and their heirs forever." This is the language of the largest legal estates, not equities.

3. Error to the judge is assigned because he held that defendant could not dispute plaintiff's title. We concur in this holding. Ordinarily the plaintiff in an action to recover land must make out a perfect title; until this is done the defendant, though he be a bold trespasser, as to title in himself may hold his arms and rest in safety. But there are exceptions to this general rule, one of which is where both parties claim through a common source. In such case neither party need go further back than this common origin. In this case both parties claimed virtually through the will of old man Calvert—the plaintiff directly and the defendant through plaintiff's husband, whose title depended upon his marital rights. If such be the fact, the defendant could not dispute plaintiff's title, as will no doubt be admitted.

The point, however, which defendant makes is that the judge was not warranted in concluding that Robert A. Archer had no other title than through his wife. The facts are that James Calvert died in possession of this land. At that time the plaintiff was the wife of Robert A. Archer. Mr. Calvert undertook to dispose of this land by his will. In accordance with directions in the will, commissioners went upon it and allotted this portion to the plaintiff, and it is fair to presume that her husband then took possession by virtue of this allotment. Under these circumstances he could not dispute the title of his wife, nor could any grantee of his.

It may be said, however, that there was no evidence that defendants claimed through Robert Archer. This cannot be denied in face of the statement in the brief "that the defendant, by way of defence, set forth the conveyance by Robert A. Archer to George Nickles and the renunciation of dower by the plaintiff." We think these facts precluded defendant from disputing plaintiff's title.

4. Did the judge err in holding that the land was properly divided into two equal parts? It seems that the testator had but two children, the plaintiff and a son, James M. Calvert, the son having three children. It was natural that the testator should desire to make an equal division of his property between these two. The language which he used in his will requires no distinction to accomplish this end. In fact it requires some straining to reach any other conclusion.

An equal division between his two children, Frances being one, and this son and his children representing the other, seems to have been the scheme of the will. This will be seen by a subsequent clause (the eighth), in which he disposes of the rest and residue of his estate. As before stated, the will in full is not given. But enough is furnished for us to conclude that such was the general scheme, and we have no doubt that the testator intended the land to be divided into two parts. The commissioners so understood it, and for thirty years the parties immediately interested have submitted. We do not see by what right the defendant can now dispute it. The cases of *Conner* v. *Johnson*, 2 *Hill Ch.* 43, and *Cole* v. *Creyon*, 1 *Hill Ch.* 319, when applied to the facts of this case, with the light thrown upon the intention by the eighth clause of the will, we think sustain this view.

5. Did the deed of plaintiff's husband with warranty estop plaintiff from asserting her rights under her father's will? An ancestor may bind heirs or devisees to the extent of real estate descended or devised. This is familiar doctrine. But a binding contract of the ancestor does not pass the title of his heirs nor prevent them as devisees from asserting it. One may be estopped by his own acts, but not by the acts of another to which he is no party. This action was for the recovery of plaintiff's land. It was no defence to such claim for the defendant to demand that the plaintiff should make good the warranty of her husband's deed. This she might be compelled to do if she had lands descended or devised from her husband of sufficient value, and still she would be entitled to recover the land if it belonged to her.

In this case, however, the defence, even if a good one, was

not made out. The only property it seems the plaintiff received unencumbered was personalty as an exemption under the homestead laws, amounting to $262. The house and lot she seems to be holding at the sufferance of indulgent creditors.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.